**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                            **v.**                                                    **5:06-CR-451**
                                                                                          **(FJS)**

**PHILIPPE REBOUX,**

                                        **Defendant.**
_____

**APPEARANCES**                                          **OF COUNSEL**

**OFFICE OF THE UNITED**                          **LISA M. FLETCHER, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
Syracuse, New York 13261-7198
Attorneys for the United States

**OFFICE OF THE FEDERAL**                       **LISA A. PEEBLES, AFPD**
**PUBLIC DEFENDER**
The Clinton Exchange, 5th Floor
4 Clinton Square
Syracuse, New York 13202
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Currently before the Court is Defendant's appeal from the Court's September 17, 2007

Order of Detention pending sentencing on the grounds that (1) he does not pose a risk of flight or

danger to the community and (2) there are "exceptional reasons" why the Court should release

him.

## II. DISCUSSION

**A.      Statutory framework**

On September 17, 2007, Defendant pled guilty to receipt and possession of child

pornography pursuant to 18 U.S.C. § 2252A(a)(2)(A) and 18 U.S.C. § 2252A(a)(5)(B).  Since

Congress has classified these offenses as "crimes of violence," *see* 18 U.S.C. § 3156(a)(4)(C),

the Court was required to order Defendant's detention pending sentencing.  Defendant now

appeals that order.  Under 18 U.S.C. § 3143(a) and 18 U.S.C. § 3145(c), which prescribe the

standards for determining whether a defendant must be detained pending sentencing, the district

court has to satisfy a two-pronged test before it can grant an appeal of a defendant's detention

order.  *See U.S. v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991).  First, the court must find by

clear and convincing evidence that the defendant is not a flight risk, nor a danger to others or to

the community.  *See id.*  Second, the court must find "exceptional reasons" for releasing the

defendant.  *See id.*  Since the statute does not indicate what circumstances may qualify as

exceptional reasons, the district court must evaluate each situation on a case-by-case basis.  *See

id.* at 497.


**B.      Defendant's appeal**

   ***1. Risk of flight or danger to others***

Defendant does not pose a risk of flight or a danger to others or to the community.  An

agent of the Federal Bureau of Investigation first approached Defendant on February 17, 2004.

Although Defendant provided the agent with a signed statement admitting that he had

downloaded and solicited child-pornography images, the FBI did not arrest Defendant until

October 16, 2006. Magistrate Judge Lowe subsequently granted Defendant a conditional release after his first appearance in federal court. Magistrate Judge Lowe even permitted Defendant to travel to France for a wedding during that time. Three years and seven months passed between February 17, 2004, the date on which the federal agent first spoke with Defendant, and September 17, 2007, the date on which the Court ordered his detention. There is no indication that, during this period of years, Defendant sought out or accessed child pornography. Nor does it appear that Defendant has ever approached or contacted a child for illicit purposes. Moreover, Defendant has been exceedingly cooperative with authorities and has not attempted to flee. Accordingly, the Court finds that Defendant has satisfied the first *DiSomma* element.

### 2. *Exceptional reasons for release*

The Second Circuit has only twice addressed what circumstances may constitute exceptional reasons for release. In *DiSomma*, the court found that an exceptional reason for release existed where the defendant presented a substantial question on appeal concerning his use of force, an element of the crime for which he was convicted. *See id.* at 498. This legal question was unusual, the court reasoned, because the disputed element was the very same one that would classify this offense as a violent crime, mandating the defendant's detention under the Bail Reform Act. *See id. DiSomma* established that some combination of unusual legal or factual circumstances could provide an exceptional reason for release. *See id.* at 497. That standard was further refined in *United States v. Lea*, 360 F.3d 401 (2d Cir. 2004). In *Lea*, the court considered a set of factual circumstances and held that "[t]here is nothing 'exceptional' about going to school, being employed, or being a first-time offender, either separately or in combination." *Id.*

at 403-04.

Neither decision controls the outcome here.  It is clear that the present case does not involve an unusual issue of law as in *DiSomma*.  Nor does the present case involve purely personal circumstances, which, the *Lea* court explained, cannot constitute exceptional reasons for release.  *See Lea*, 360 F.3d at 403; *see also United States v. Lippold*, 175 F. Supp. 2d 537, 540 (S.D.N.Y. 2001) (holding that taking care of three young children, one of whom suffered from Bell's Palsy, and being needed at work were purely personal circumstances, not exceptional reasons for release).  The Court must therefore determine whether personal circumstances in combination with other factors can constitute exceptional reasons.

Since Congress has not defined "exceptional" under § 3145(c), the Court construes this term according to its "plain and ordinary meaning."  *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002) (citations omitted).  Webster's Dictionary defines "exceptional" as "being out of the ordinary" or "uncommon, rare."  *Webster's Third New International Dictionary* 791 (1993).  Finding circumstances that are "out of the ordinary" is not an onerous hurdle to surmount.  "Exceptional" does not mean "extreme" or "novel," but simply "infrequent" or "uncommon."  *See id*; *DiSomma*, 951 F.2d at 497.  In determining what is exceptional, the district court is afforded great discretion.  *See DiSomma*, 951 F.2d at 497-98.  Indeed, the Second Circuit emphasized that the district court's discretion "is constrained only by the language of the statute: 'exceptional reasons.'"  *Id*. at 497.  As discussed, this language is quite broad.

Purely personal circumstances cannot alone justify release because, to some degree, everyone facing detention will suffer hardships; however, personal circumstances can be factors

in the "exceptional reasons" calculus.[1]  The Ninth Circuit has provided some guidance for determining exceptional circumstances in the form of the following non-exclusive factors: (1) whether the defendant's criminal conduct was aberrational; (2) whether "the defendant led an exemplary life prior to his offense and would be likely to continue to contribute to society significantly if allowed to remain free on bail"; (3) "the nature of the violent act itself"; (4) the length of the prison sentence; (5) whether prison would impose unusual hardships on a defendant due to illness or injury; (6) the nature of a defendant's arguments on appeal; (7) whether "the defendant is exceptionally unlikely to flee or to constitute a danger to the community"; and (8) "whether the defendant was unusually cooperative with the government."  *United States v. Garcia*, 340 F.3d 1013, 1019-21 (9th Cir. 2003).

First, although the possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B) is labeled a "crime of violence" for purposes of sentencing pursuant to 18 U.S.C. § 3156(a)(4)(C), Defendant's conduct was not violent.  He did not have sexual contact with any child, nor did he attempt to communicate with any child for illicit purposes.  Obtaining child pornography for

---

[1] The scant legislative history indicates that, in fact, Congress intended that a defendant's personal circumstances together with other unusual factual or legal issues could constitute exceptional reasons for release.  The court in *DiSomma* listed two hypothetical scenarios proposed in a letter from the Justice Department to Senator Paul Simon, sponsor of the Mandatory Detention for Offenders Convicted of Serious Crimes Act.  *See DiSomma*, 951 F.2d at 497.  The first scenario involved "an elderly man with lifelong community ties, convicted under the federal murder statute of the mercy killing of his wife, [who is] challeng[ing] the applicability of that statute to mercy killings, a question of first impression in the circuit."  *Id*. The second scenario involved "a seriously wounded drug dealer whose appeal raised a novel search and seizure issue which could change the outcome of his trial."  *Id*.  Both scenarios involved personal circumstances — namely, old age, strong community ties, and serious injuries — that would make detention particularly difficult.  Therefore, Congress apparently contemplated that personal hardships can combine with other circumstances to create exceptional reasons for release.

private sexual gratification, although wrongful, is not in and of itself an act of violence under any ordinary definition of that term.

Second, Defendant poses an exceptionally low risk of flight or danger to others. Although likelihood of flight and potential for danger to the community are separate factors in determining whether a defendant should be released under 18 U.S.C. § 3143(a)**,** *Garcia* suggests that courts consider these factors in the "exceptional reasons" analysis if they are extraordinary. *See id.* at 1021. The Government's argument that Defendant's low risk of flight or danger to others is not exceptional rings hollow given the time line of this case. To say that the delay in prosecuting Defendant was "uncommon" or "rare" is an understatement. The FBI first obtained Defendant's admission statement on February 17, 2004, but did not arrest him until October 16, 2006, two years and eight months later. During that time, Defendant continued to develop as a productive member of his religious community and workplace and does not appear to have committed any additional offense. While on conditional release, Defendant even traveled to France with Magistrate Judge Lowe's permission. He returned from that trip as ordered and has made no attempt to flee.

Third, Defendant's cooperation with authorities has been complete and unconditional. When an FBI agent confronted him, Defendant freely spoke to that agent and provided a signed statement. He admitted that he had downloaded child pornography and turned his computer over to investigators for inspection. Although Defendant's cooperation did not produce the kind of societal benefits that an informant, who exposes criminal activity under threat of harm, might have provided, his substantial cooperation should be considered along with other factors pointing toward release.

Finally, Defendant has exhibited exemplary behavior prior to and during the criminal proceedings.  He was employed as a private security guard at the time that the FBI approached him.  After he began cooperating with authorities, he won several service awards and certificates. He continued to show signs of self-improvement, graduating as valedictorian at the Court Security Academy and obtaining a job with the Onondaga County Sheriff's Department.  Even after the sheriff's department terminated him, Defendant obtained employment at a car dealership, where his supervisor considered him a valued employee.  Moreover, Defendant has unquestionably contributed to his community in the past and would likely continue to have a positive influence were he released pending sentencing.  A letter from Defendant's Rabbi holds particular weight.  The Rabbi, who emphasized how rare it is for him to put his "neck on the line" for congregants in this manner, attested to Defendant's positive influence on his religious community.  In particular, the Rabbi wrote about Defendant's kindness and attention toward a physically-challenged child in the congregation.

Considering this combination of factors, the Court concludes that Defendant should be released from detention.  Defendant has not simply shown that, due to personal circumstances, continued detention would cause hardship.  He has demonstrated that, through his faith community and work environment, he has found a support system to aid him in a course of self-improvement.  *See United States v. Kaquatosh*, 252 F. Supp. 2d 775, 779-80 (E.D. Wis. 2003) (holding that exceptional reasons for release existed where the defendant successfully completed a program for substance abuse, secured employment and became a successful employee, and appeared earnest in his request for a psychological evaluation and treatment prior to imprisonment).  In turn, his community has seen, and may continue to enjoy, the positive

externalities of this personal growth.  Continued detention pending sentencing would prematurely extinguish these mutual benefits.  Furthermore, the unusual circumstances of this case significantly diminish the need for Defendant's detention prior to sentencing.  His conduct was not violent in any way, the extraordinary delay in his arrest and prosecution demonstrates that he poses neither a risk of flight nor danger to the community, and he has been unusually cooperative with authorities.

## III. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's appeal from the Court's September 17, 2007 Order of Detention pending sentencing is **GRANTED**; and the Court further

**ORDERS** that the United States Marshal release Defendant from detention; and the Court further

**ORDERS** that Defendant's release is subject to the same conditions imposed pursuant to Magistrate Judge Lowe's Order of November 17, 2006.

**IT IS SO ORDERED.**

Dated: December 14, 2007
      Syracuse, New York

                                    Frederick J. Scullin, Jr.
                                    Senior United States District Court Judge